TAX COURT MANAGEMENT OFFICE
(609) 815-2922
P.O. Box 972
TRENTON, NJ 08625-0972



## Corrected Opinion Notice

**Date: May 12, 2022**

**Michael I. Schneck, Esq**
Schneck Law Group, LLC

**Dominic P. DiYanni, Esq.**
Eric M. Bernstein & Associates, LLC

**From: Management Office**

**Re:  Giant Realty LLC v. Lavallette Borough**
**Docket number: 0010063-2014**

     **The attached corrected opinion replaces the version released on May 12, 2022 The Opinion has been corrected as noted below:**

     Page 2, corrected Tax Lot 5 to read - $810,833.00

**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS**

**Corrected 4/28/22 – page 6, corrected paragraph 2
Corrected 5/12/22 – page 2, figure for lot 5**

|  |  |  |
|---|---|---|
| GIANT REALTY, LLC, | : | TAX COURT OF NEW JERSEY |
|  | : | DOCKET NO. 001063-2014 |
| Plaintiff | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| LAVALLETTE BOROUGH, | : |  |
|  | : |  |
| Defendant | : |  |
|  | : |  |

Approved for Publication
In the New Jersey
Tax Court Reports

Decided: April 28, 2022

Michael I. Schneck for plaintiff (Schneck Law Group, LLC., attorneys).

Dominic P. DiYanni, for defendant (Eric M. Bernstein & Associates, LLC, attorneys).

FIAMINGO, J.T.C.

This matter is before the Tax Court on plaintiff's motion for application of the provisions of N.J.S.A. 54:51A-8 (the "Freeze Act") to tax years 2015 and 2016. Defendant municipality opposes the application asserting that there was a change in value subsequent to the 2014 tax year. The court finds that defendant failed to make a *prima facie* showing that a substantial and meaningful change in value occurred between the base year 2014 and freeze years 2015 and 2016. Accordingly, the court finds that the Freeze Act applies to both years 2015 and 2016.

## FACTUAL AND PROCEDURAL BACKGROUND

Giant Realty, LLC ("plaintiff") timely filed a direct appeal in the Tax Court challenging the 2014 tax year local property tax assessments on the real property located in the Borough of

Lavallette ("defendant") designated as lots 1, 2, 3, 4, 5, and 6 in block 21 on the official tax map of defendant municipality (collectively the "subject property"). After a trial on the issue of valuation, the court entered judgment on March 20, 2020, reducing the 2014 tax year assessment for each of the subject lots ("2014 Judgment"). The original assessments and the judgments entered by the court with respect to each of the subject lots[1] was as follows:

| Tax Lot | Original Assessment | Judgment |
|---------|---------------------|----------|
| 1 | $1,250,000.00 | $810,833.00 |
| 2 | $1,187,500.00 | $810,833.00 |
| 3 | $1,187,500.00 | $810,833.00 |
| 4 | $1,250,000.00 | $810,833.00 |
| 5 | $1,000,000.00 | $810,833.00 |
| 6 | $1,000,000.00 | $810,834.00 |

On May 14, 2020, plaintiff filed a motion for relief under the Freeze Act to apply the judgment to tax years 2015 and 2016. Defendant filed opposition and the motion was heard before the Tax Court Judge who heard the trial testimony. On August 12, 2020, an order was entered denying plaintiff's motion without prejudice.[2] On October 6, 2021, plaintiff refiled a motion seeking Freeze Act protection identical to the motion filed on May 14, 2020. Defendant filed opposition stating, "[d]efendant shall be relying upon its previously filed opposition to the Freeze Act motion filed by taxpayer's counsel which is already uploaded on e-courts for this [d]ocket." No additional certifications or argument was filed by defendant.

---

[1] Each lot at issue was unimproved vacant land during each of the years in question and thus the assessment is land only.
[2] As a result of the general reassignment of matters in the Tax Court on September 1, 2020, these matters were transferred to this court for resolution.

**LEGAL ANALYSIS**

The Freeze Act provides in pertinent part,

> Where a judgment not subject to further appeal has been rendered by the Tax Court involving real property, the judgment shall be conclusive and binding upon the municipal assessor and the taxing district, parties to the proceeding, for the assessment year and for the two assessment years succeeding the assessment year covered by the final judgment, except as to changes in the value of the property occurring after the assessment date. The conclusive and binding effect of the judgment shall terminate with the tax year immediately preceding the year in which a program for a complete revaluation or complete reassessment of all real property within the district has been put into effect. If as of October 1 of the pretax year, the property in question has been the subject of an addition qualifying as an added assessment, a condominium or cooperative conversion, a subdivision or a zoning change, the conclusive and binding effect of such judgment shall terminate with said pretax year.

> [N.J.S.A. 54:51A-8(a)]

The Freeze Act is intended "to prevent 'the repeated yearly increases in the assessed value of property, not related to or justified by any changes increasing its market value and resulting in harassment of the taxpayer, subjecting him to the trouble and expense of annual appeals to the county tax board.'" AVR Realty Co. v. Cranford Twp., 316 N.J. Super. 401, 405-06 (App. Div. 1998), certif. denied, 160 N.J. 476 (1999) (quoting Newark v. Fischer, 8 N.J. 191, 200 (1951). The Freeze Act is self-executing. AVR Realty Co. v. Cranford Twp., 294 N.J. Super 294, 299 App. Div. 1996), certif. denied 148 N.J. 460 (1997).

> The statute thus provides a clear and unequivocal mandate to taxing districts. They must accord the taxpayer the benefit of the Tax Court judgment for the two tax years following the last year encompassed by the judgment--that is, the base year--unless there has been a general revaluation or a change of value of the subject property prior to the assessment date for a "freeze" year.

> [Id. at 298].

3

Procedurally, where the judgment for the base year becomes final after the assessment is fixed for the freeze years, a taxpayer must file a motion to obtain Freeze Act relief.[3] See Curtiss Wright Corp. v. Wood-Ridge Boro., 4 N.J. Tax 68 (Tax 1982). Thus, plaintiff here has moved for application of the Freeze Act in this matter for the two years following entry of judgment.

In opposition defendant asserts that there has been a change in value of the subject property which occurred after the assessment dates such that the 2014 Judgment is not conclusive and binding to the freeze years. In cases where a municipality opposes a motion for Freeze Act application by asserting a change in value,

> a municipality must make a prima facie showing that there was a change in the property's value between the assessment dates for the base year and freeze years and that: '"(1) the change in value result[ed] from an internal or external change; (2) the change materialized after the assessing date of the base year; and (3) the change substantially and meaningfully increased the value of the property."' AVR Realty Co. v. Cranford Township, 316 N.J. Super. 401, 407, 720 A.2d 434 (App. Div. 1998), certif. denied, 160 N.J. 476, 734 A.2d 791 (1999) (AVR Realty II). If the municipality makes this prima facie showing, it is entitled to a plenary hearing regarding the applicability of the Freeze Act. Ibid.; see also Entenmann's, Inc. v. Totowa Borough, 19 N.J. Tax 505, 515 (Tax 2001); Rockstone Group v. Lakewood Township, 18 N.J. Tax 117, 120-21 (Tax 1999).
>
> [Coastal Eagle Point Oil Co. v. Twp. of W. Deptford, 353 N.J. Super. 212, 218 (App. Div. 2002)].

Changes in value may occur as a result of an internal change or an external change. "[I]nternal changes consist of capital improvements that substantially and meaningfully increase the value of the subject property, while external changes consist of extreme economic changes or

---

[3] The 2014 Judgment for the 2014 base year was not entered until March 20, 2020 well after the assessment dates for the 2015 and 2016 tax years, October 1, 2014 and October 1, 2015 respectively.

4

zoning changes in close proximity to the property that increase its value." 160 Chubb Props., LLC v Twp. of Lyndhurst, 30 N.J. Tax 613 (Tax 2018).[4]

Defendant asserts an external change occurred due to the issuance of a permit by the New Jersey Department of Environmental Protection pursuant to the provisions of the Coastal Area Facility Review Act, N.J.S.A. 13:19-1 to -51 ("CAFRA"), permitting development of the subject property. CAFRA's purpose is the protection of "the unique and fragile coastal zones of the State." In re Egg Harbor Associates (Bayshore Centre), 94 N.J. 358, 364 (1983). Accordingly, "CAFRA grants broad authority to the DEP to protect the environment and to regulate land use within the coastal area for the general welfare." Matter of Cape May Cty. Mun. Utils. Auth., 242 N.J. Super. 509, 514 (App. Div. 1990).

As explained in Siegel v. N.J. Dep't. of Envtl. Prot., 395 N.J. Super. 604, 615 (App. Div. 2007)

> In enacting CAFRA, the Legislature found
>
>> that certain portions of the coastal area are now suffering serious adverse environmental effects resulting from existing facility activity impacts that would preclude or tend to preclude those multiple uses which support diversity and are in the best long-term, social, economic, aesthetic and recreational interests of all people of the State.
>>
>> [N.J.S.A. 13:19-2.]
>
> The Legislature balanced, however, its desire to address the adverse environmental effects of coastal area development with recognized economic considerations for those who inhabited the coastal areas, noting CAFRA was intended to also
>
>> encourage the development of compatible land uses in order to improve the overall economic position of

---

[4] The Appellate Division affirmed the trial court in an unpublished decision which can be found at 2020 N.J. Super. Unpub. LEXIS 1551 (App. Div. 2020).

the inhabitants of that area within the framework of a comprehensive environmental design strategy which preserves the most ecologically sensitive and fragile area from inappropriate development and provides adequate environmental safeguards for the construction of any facilities in the coastal area.

[Ibid.]

A CAFRA permit is required to develop property subject to its provisions. Nonetheless, "as a general matter, CAFRA 'regulations do not preempt local zoning authority.'" Bubis v. Kasin, 184 N.J. 612, 630 (2005) (quoting Lusardi v. Curtis Point Prop. Owners Ass'n, 86 N.J. 217, 229 (1981)). To develop a property subject to CAFRA one must also obtain approval from local zoning authorities before any development may commence. See Ferraro v. Zoning Bd. of Adjustment, 119 N.J. 61 (1990). Thus, while impactful and a necessary precursor to development, the issuance of a CAFRA permit does not constitute final approval for development.

A CAFRA permit was issued on September 22, 2015, authorizing "the construction of four new single family dwellings and associated development." Counsel argues that issuance of the CAFRA permit resulted in the subject property being developable subject to local zoning and building laws. Because the subject property was previously undevelopable as a "dune," counsel argues that there was an external increase in value upon issuance of the CAFRA permit. Counsel further argues that "the progression of the CAFRA permitting process and the ultimate approval" resulted in a change in value, such that the anticipatory issuance of the permit positively affected the value for the 2015 tax year, even though the permit was not issued until nearly one year after the valuation date for that tax year. In support of this latter position counsel's legal brief references testimony of plaintiff's expert at trial regarding the CAFRA application process.[5]

---

[5] Counsel has not provided this court with any expert report to support the argument, nor has counsel provided the court with any transcript of the trial proceedings in which such testimony

6

Defendant provides no certification of any expert to demonstrate that an increase in value actually occurred, nor what that increase in value might be. Counsel argues that logic dictates that the value of property which was previously subject to restrictions prohibiting development necessarily increased because of the issuance of the CAFRA permit. Counsel surmises, without support, that although the permits were not actually issued until September 21, 2015, the subject property also increased in value as of October 1, 2014, due to the probability that the permits would issue.

In sum defendant's counsel asserts that as the permit progressed through the application process the likelihood of issuance increased such that a buyer would likely pay more for the lots than would have been paid as of October 1, 2013. However, this assertion is unsupported by any evidence whatsoever. Defendant has provided nothing to this court demonstrating that the issuance of the CAFRA permit was reasonably probable as of the October 1, 2014 valuation date. Moreover, defendant has failed to show that a willing buyer would have paid substantially and meaningfully more for the subject property on October 1, 2014 than he or she would have paid on October 1, 2013. Nothing changed between those two dates, except the passage of time. The CAFRA permits had not issued, and defendant provides no support for its conclusion that the issuance of a CAFRA permit was more reasonably probable on October 1, 2014 than it was on October 1, 2013.

Counsel references the bench opinion delivered with respect to the 2014 Judgment wherein the trial court concluded that there was a reasonable likelihood the CAFRA permit would be

was apparently given. No affidavit or other certification as to this testimony was submitted to the court. The court has no basis upon which to evaluate the accuracy of counsel's characterization of the testimony provided by the expert at trial or the credibility of any statements which might have been made by the expert.

obtained in reaching the determination that the subject property had "considerable value."[6]  This court's determination as to the proper application of the Freeze Act is not influenced by the factors taken into consideration by the trial court in arriving at a conclusion of value for the base year.[7]  This court's determination is informed only with respect to whether defendant has made a *prima facie* showing that there was a *change* in value from the base year to the freeze act years.

In further support of its position that there was a change in value for the 2015 tax year, defendant refers to State v. Caoili, 135 N.J. 252 (1994) and other condemnation cases.  In Caoili the court held that,

> in determining the fair market value of condemned property as a basis for just compensation, the jury may consider a potential zoning change affecting the use of the property provided the court is satisfied that the evidence is sufficient to warrant a determination that such a change is reasonably probable. If evidence meets that level of proof, it may be considered in fixing just compensation in light of the weight and effect that reasonable buyers and sellers would give to such evidence in their determination of the fair market value of the property.
>
> [Id. at 265].

Defendant misapprehends its obligations hereunder.  The question here is not whether the likelihood of the issuance of the CAFRA permit would have been considered by a willing buyer and willing seller.  The question here is whether defendant has established a *prima facie* case that an external change in the value of the subject property materialized after October 1, 2013, that "substantially and meaningfully increased the value of the property." Coastal Eagle Point Oil Co., 353 N.J. Super. at 218.

---

[6]The court was not provided with any transcript of the oral decision of the trial court and cannot evaluate the accuracy of counsel's characterization of the court's oral decision.

[7] Arguably, defendant's position that a substantial and meaningful increase in value occurred on October 1, 2014 is undermined by its position that the trial court already included the increased probability of the issuance of the CAFRA permit in the value determination for October 1, 2013.

A *prima facie* case is one where a party produces enough evidence to allow the court to infer the fact at issue and rule in the party's favor. Blacks Law Dictionary, 1382 (10th ed. 2014). Defendant produced no evidence to support its supposition that was an increased probability that the CAFRA permit would issue on or before October 1, 2014, and that such increased possibility substantially and meaningfully increased the value of the subject property over its value on October 1, 2013. Certainly, defendant has provided nothing in support of its hollow assertion that the mere passage of time made it more likely that the CAFRA permit would be issued so as to meaningfully and substantially increase its fair market value on October 1, 2014. Accordingly, the court finds that defendant failed to demonstrate a *prima facie* case entitling it to a plenary hearing on the application of the Freeze Act for the 2015 tax year.

The CAFRA permit issued on September 21, 2015. Defendant asserts there was a change in value for the 2016 tax year because the CAFRA permit issued prior to the October 1, 2015 valuation date for the 2016 tax year. Again, defendant provides no evidence in support of its position. Instead, defendant argues it is unquestionable that the change in the status of the lots from unbuildable dunes to buildable lots substantially and meaningfully increased their value.[8] In opposition, plaintiff argues that the mere issuance of the CAFRA permit does not constitute a *prima facie* showing that there was a meaningful and substantial change in value to the subject property.

The court is mindful that,

> [t]here may be instances in which a change in zoning or a physical change alone is sufficient to conclude that there has been a change in value, *but whether that change is substantial and meaningful can*

---

[8] Here the court notes that the CAFRA permit, while applicable to all six lots under consideration, permitted the construction of four single family homes, requiring that the six lots be reconfigured into four building lots. Defendant did not provide any explanation of how the value of the reconfigured four buildable lots related to the value of the six lots under consideration.

9

*only be measured by a showing of the value of the property before and after the change.*

[2nd Roc-Jersey Assocs. v. Morristown, 11 N.J. Tax 45, 52 (Tax 1990) (Emphasis added)].

See also Ritchie & Page Distrib. Co., Inc. v. City of Trenton, 29 N.J. Tax 538, 545-47 (Tax 2016) (bare allegation of change in occupancy does not establish prima facie showing of substantial change in value); Entenmann's Inc. v. Borough of Totowa, 19 N.J. Tax 505, 514-15 (Tax 2001) (allegation in change of highest and best use is not necessarily a sufficient showing of change in value), aff'd, 21 N.J. Tax 182 (App. Div. 2003).

Here defendant provided no evidence of a change in value of the lots as of either valuation date at issue. The court has no evidence that the issuance of the CAFRA permit had a positive or negative effect on the value of the subject property or that that effect was substantial and meaningful. While the court may infer that a buildable lot is more valuable than a non-buildable dune, the court has been presented with no evidence that the value of the lots here increased over their October 1, 2013 value of $810,834, or that such an increase was substantial and meaningful. Defendant produced no evidence of the value of a building lot as of October 1, 2015 from which the court could infer that the value of the subject property increased, substantially and meaningfully over its October 1, 2013 value.

> A municipality must first show that the property's value changed between "the assessment dates for the base year and freeze years" due to "an internal or external change," which "substantially and meaningfully increased the value of the property," after which it is entitled to a "plenary hearing" on the applicability of the Freeze Act. Coastal Eagle Point Oil Co. v. Township of West Deptford, 353 N.J. Super. 212, 218 (App. Div. 2002) (citations and quotations omitted).
>
> [Ritchie & Page Distrib. Co., Inc. v. City of Trenton, 29 N.J. Tax at 545].

The court finds defendant has failed to make the required *prima facie* showing of an increase in value which would entitle it to a plenary hearing.

Judgment granting Freeze Act relief to the subject property for tax years 2015 and 2016 will be entered.